UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:13-cr-0022-TWP-MGN |
| | ) | |
| PHILLIP T. NASH, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION TO SUPPRESS**

This case is before the Court on Defendant Phillip T. Nash's ("Mr. Nash") Motion to Suppress. Mr. Nash seeks to suppress all evidence obtained during a search of his residence on or about December 2011. The Court previously denied Mr. Nash's request for an evidentiary hearing as the motion raises purely legal questions. (See Dkt. 26.) Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings and conclusions of law. For the reasons set forth below, Mr. Nash's Motion to Suppress (Dkt. 22) is **DENIED**.

## I. BACKGROUND

In December 2011, a confidential informant ("CI") informed Indiana law enforcement officers that Mr. Nash had bragged to him/her about having a marijuana growing operation inside his residence in Brownstown, Indiana. On December 13, 2011, responding to Mr. Nash's invitation to meet and see the marijuana grow, the CI traveled to Mr. Nash's residence. Unbeknownst to Mr. Nash, the C.I., acting under the control of law enforcement, secretly collected data inside of his residence using both audio and video recording devices. Mr. Nash does not dispute consenting to the CI's visitation or entrance into his property, and Mr. Nash acknowledges that he voluntarily admitted the CI into his residence. During the visit, Mr. Nash took the CI to a separate garage structure on the property where the recording equipment

captured the marijuana growing operation. The information collected was then used by law enforcement officers to obtain a search warrant for Mr. Nash's residence and property. The execution of the warrant led to the discovery of over 300 live marijuana plants in Mr. Nash's garage. Mr. Nash was later indicted by a federal grand jury and charged with several counts related to the manufacture, possession and intent to distribute marijuana.

## II. DISCUSSION

Mr. Nash asserts that a warrantless search was performed when officers directed the CI to record audio and visually inside his residence and without these recordings, the Government could not have obtained the information it relied upon in order to obtain the search warrant. For these reasons, Mr. Nash asserts the search was in violation of his rights under the Fourth Amendment of the United States Constitution and he urges the Court to suppress all evidence obtained by the recordings and the evidence that was discovered as a result of the search warrant.

The parties agree that an individual's home is specially protected by the Fourth Amendment, and the Government concedes that Mr. Nash's interest in the protection of his home extends to the detached garage on his property. (Dkt. 24 at 3) However, the Government argues that "the Fourth Amendment protects people, not places" and therefore "[what] a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351 (1967) (citations omitted).

Mr. Nash argues that under the court's decision in *United States v. Karo*, 468 U.S. 705 (1984), the secret collection of information inside the residence of a suspect without a warrant constitutes an illegal search under the Fourth Amendment. In *Karo*, the government placed a hidden beeper in a can of ether, which a CI then sold to the defendants. *Id*. at 708. Based on information received from the CI, the government believed the ether was to be used to extract cocaine from clothing that had previously been imported into the United States. *Id*. The

installation of the beeper among the cans of ether enabled the government to track the location of the cans. *Id*. After a series of moves, the cans eventually found their way to a home, which the government raided pursuant to a warrant issued partially on the basis of the government's determination—through the tracking of the beeper—that the can of ether was present in the home. *Id*. at 709. The Court in *Karo* stated "private residences are places in which the individual normally expects privacy free of governmental intrusion not authorized by a warrant, and that expectation is plainly one that society is prepared to recognize as justifiable." *Id*. at 714. The Court held that an unconstitutional search occurs where "the Government surreptitiously employs an electronic device to obtain information that it could not have obtained by observation from outside the curtilage of the house." *Id.* at 715. Mr. Nash argues that like in *Karo*, because the officers used a monitoring device inside his private residence without a warrant, all evidence stemming from this illegal search should be suppressed.

The Court is not persuaded because Mr. Nash's argument misunderstands and misapplies the holding in *Karo*. The Supreme Court has clearly established that the use of a confidential informant and audio recordings made by such an informant is not an unconstitutional search within the meaning of the Fourth Amendment. Mr. Nash argues, based on *Karo*, that the Government's use of the recording devices hidden on the CI constitutes an illegal search. This is despite Mr. Nash's acknowledgment that "the defendant voluntarily brought the informant inside his home, who was carrying a hidden electronic recording device." (Dkt. 25 at 3.) Further, Mr. Nash acknowledges that "the confidential informant could have reported back to the Officers as to what he saw, or even testified in an affidavit for a search warrant." *Id*.

"[T]here is a substantial distinction between "revelation[s] to the Government by a party to conversations with the defendant" and eavesdropping on conversations without the knowledge or consent of either party to it. *A homeowner takes the risk that his guest will cooperate with the*

3

*Government* but not the risk that a trustworthy friend has been bugged by the Government without his knowledge or consent. 468 U.S. at 716 n.4 (citing *United States v. White*, 401 U.S. 745, 749 (1971)) (emphasis added). Here, Mr. Nash forfeited his privacy interest in the marijuana grow when he voluntarily exposed the activities to his invited guest, who happened to be a CI equipped with audio and video recording devices. There can be no debate about the applicability of *Karo* to this case; the Supreme Court deliberately distinguished the facts of that case from those in Mr. Nash's. Based on *Karo*, it simply cannot be said that the Fourth Amendment precludes a confidential informant from recording his interactions with a suspect inside the suspect's residence and delivering the recordings to law enforcement.

In reaching this decision, the Court notes that nearly half a century ago, the Supreme Court held that the government's use of confidential informants to acquire evidence of a crime is not an unconstitutional search or seizure under the Fourth Amendment when the informant discloses his conversations with a defendant to government investigators. *Hoffa v. United States*, 385 U.S. 293, 303 (1966). In *Hoffa*, the court held that the failure to disclose that a visitor is a CI to the target of an investigation does not negate a defendant's consent to the entry of that visitor because of the defendant's ignorance of the informant's true purpose. *Id*. Where the conversations disclosed to the government were directed at the informant or conducted in his presence, the court made it clear that the Fourth Amendment does not protect "a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *Id*. at 302.

Just as an individual's right to protection against search and seizure is not violated by a CI's disclosure of what the individual believed to be a private conversation, neither is this right violated if the CI records the conversation. *White*, 401 U.S. at 751 (citing *Lopez v. United States*, 373 U.S. 427 (1963)). In *White*, the court stated:

> If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, *neither does a simultaneous recording of the same conversations made by the agent* or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks.

401 U.S. at 751 (emphasis added).

Although the Seventh Circuit has not specifically addressed whether video, rather than audio, recording by a CI consensually admitted to the suspect's home constitutes a prohibited search, the question has been addressed in many other circuits, with the same result in every case: a CI's use of video recording equipment is no less constitutional than the use of audio recording equipment when the CI has been admitted with the consent of the suspect and remains in the presence of the suspect for the duration of the recording. *See United States v. Davis*, 326 F.3d 361, 366 (2d Cir. 2003) (holding that a video recording by a CI is no less allowable than an audio recording); *United States v. Lee*, 359 F.3d 194, 200 (3d Cir. 2004) ("[I]f a person consents to the presence at a meeting of another person who is willing to reveal what occurred, the Fourth Amendment permits the government to obtain and use the best available proof of what the latter person could have testified about."); *United States v. Brathwaite*, 458 F.3d 376, 380 (5th Cir. 2006) ("[W]e are unable to find a constitutionally relevant difference between audio and video surveillance."); *United States v. Wahchumwah*, 710 F.3d 862, 868 (9th Cir. 2013) ("We hold that an undercover agent's warrantless use of a concealed audio-video device in a home into which he has been invited by a suspect does not violate the Fourth Amendment.").

Mr. Nash has failed to articulate any reason why the video recording of a suspect's interaction with a CI should be held to be sufficiently different from an audio recording so as to constitute a prohibited search. In light of the Supreme Court's clear precedent allowing the electronic monitoring of a suspect's interaction with a CI and the uniformity of the law in the circuits that have addressed the issue, the Court finds the video recording of the interior of Mr.

Nash's home by a consensually admitted CI did not violate Mr. Nash's Fourth Amendment rights.

### III. **CONCLUSION**

The Supreme Court has clearly stated that the use of confidential informants and audio recording devices are not prohibited by the Fourth Amendment. The use of video recording devices by a CI to record interactions with, and in the presence of, a suspect is not different from the use of audio recording devices in any constitutionally relevant way. Accordingly, the Court finds Mr. Nash's Fourth Amendment rights were not violated by the Government, and his Motion to Suppress (Dkt. 22) is **DENIED**.

**SO ORDERED.**

Dated: 10/02/2013

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Stephen Dillon
DILLON LAW OFFICE
steve@dillonlawindy.com

William McCoskey
OFFICE OF THE UNITED STATES ATTORNEY
william.mccoskey@usdoj.gov